**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| WATERS INDUSTRIES, INC., an Illinois corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.  11 C 3791 |
| JJI INTERNATIONAL, INC., a Rhode Island corporation and STEIN MART, INC., a Florida Corporation, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On June 3, 2011, Plaintiff Waters Industries, Inc. ("Waters") filed the present lawsuit

against Defendants JJI International, Inc. ("JJI") and Stein Mart, Inc. ("Stein Mart") alleging that

the lighted reading glasses Defendants sell or offer under the name "LIGHT-UP READERS"

infringe four patents, namely, U.S. Patent No. 6,612,695 (the "'695 patent"); U.S. Patent No.

6,863,416 (the "'416 patent"); U.S. Patent No. 7,377,664 (the "'664 patent"); and U.S. Patent

No. 7,938,553 (the "'553 patent").  Defendants filed their Answer and Counterclaim on June 28,

2011.  Before the Court is Defendants' motion for leave to amend its Answer and Counterclaim

pursuant to Federal Rule of Civil Procedure 15(a)(2).  For the following reasons, the Court, in its

discretion, denies Defendants' motion for leave to amend.

## LEGAL STANDARD

Although this is a patent case, the Court applies the Seventh Circuit's procedural

standards.  *See Exergen Corp. v. Wal-Mart Stores, Inc.,* 575 F.3d 1312, 1318 (Fed. Cir. 2009)

(regional circuit law applies to procedural issues that are not specific to patent law). Under Rule 15(a)(2), a plaintiff may amend its complaint "only with the opposing party's written consent or the court's leave." Fed.R.Civ.P. 15(a)(2). "Although leave to amend should be 'freely given,' that does not mean it must always be given." *Hukic v. Aurora Loan Servs.,* 588 F.3d 420, 432 (7th Cir. 2009); *see also Crest Hill Land Dev., LLC v. City of Joliet,* 396 F.3d 801, 804 (7th Cir. 2005) (noting that despite the liberal nature of Rule 15(a), "leave to amend is not automatically granted"). Indeed, district courts "'have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the [non-moving party], or where the amendment would be futile.'" *Hukic,* 588 F.3d at 432 (quoting *Arreola v. Godinez,* 546 F.3d 788, 796 (7th Cir. 2008)); *see also Independent Trust Corp. v. Stewart Info. Servs. Corp.,* 665 F.3d 930, 943 (7th Cir. 2012) ("[I]t is well settled that a district court may refuse leave to amend where amendment would be futile."). An amendment is futile if the amended claims could not survive a motion to dismiss pursuant to Rule 12(b)(6). *See Arlin-Golf, LLC v. Village of Arlington Heights,* 631 F.3d 818, 822-23 (7th Cir. 2011).

## BACKGROUND

In their motion for leave to amend, Defendants seek to add Counterclaim V and an Eleventh Affirmative Defense alleging that the '553 patent is unenforceable due to inequitable conduct. The '553 patent is a continuation of U.S. Patent No. 7,699,486 (the "'486 patent") that the Patent and Trademark Office ("PTO") issued on April 20, 2010. Both the '553 patent and the '486 patent name Edward Beiner ("Beiner") as the inventor. Through counsel, Beiner filed a continuation application that the PTO issued as the '553 patent. Beiner's counsel at the law firm of Malloy & Malloy, P.L. prosecuted the '486 patent and also the continuation application until

2

Beiner assigned the '486 patent and pending continuation application to Waters on July 20, 2010. Thereafter, on September 28, 2010, Waters' counsel at Fitch, Even, Tabin & Flannery assumed the prosecution of the continuation patent. On October 19, 2010, the Examiner issued a non-final rejection of the continuation application based on double patenting that could be overcome by filing a terminal disclaimer – which Waters' counsel subsequently filed. The PTO then issued the '553 patent on May 10, 2011.

In support of the newly alleged inequitable conduct in Counterclaim V and the Eleventh Affirmative Defense, Defendants maintain that Waters should have disclosed the following four documents during the prosecution of the '553 Beiner patent: (1) U.S. Application No. 12/835,508, which matured into U.S. Patent 8,235,524 ("'524 patent"); (2) the non-published provisional application 60/681,852 filed May 15, 2005; (3) the non-published provisional application 60/745,217 filed May 2, 2006; and (4) the Patent Cooperation Treaty ("PCT") application PCT/US2006/018968 filed May 17, 2006. The PTO issued the '524 patent to Michael Waters on August 7, 2012. That same day, Waters Industries filed a lawsuit alleging infringement of the '524 patent against JJI International, Inc.

## ANALYSIS

In their motion for leave to amend, Defendants seek to add Counterclaim V and an Eleventh Affirmative Defense alleging that the '553 Beiner patent is unenforceable due to inequitable conduct. In response, Waters argues that Defendants' proposed Counterclaim V and Affirmative Defense are untimely and futile. The Court agrees.

## I.     Timeliness

Waters filed the present lawsuit on June 3, 2011 and the parties filed their joint initial status report on July 19, 2011.  On July 26, 2011, the Court entered an order setting the case schedule based on the Northern District of Illinois Local Patent Rules.  In this schedule, the fact discovery deadline was February 28, 2012.  According to the original order, the final infringement, unenforceability, and invalidity contentions pursuant to Local Patent Rule 3.1 were due on or before December 20, 2011.

In the meantime, Defendants deposed Beiner on November 22, 2011.  At a November 29, 2011 status hearing, Defendants' counsel informed the Court that during Beiner's deposition, it became apparent that there may be "an unenforceability issue that would cause us to seek leave to amend our answer to [the] claim that the '553 patent is unenforceable."  (R. 57-6,  Ex. 7, 11/29/11 Hr'g Tr., at 5.)  Defendants' counsel then asked the Court for a 60-day extension for all deadlines.  The Court granted the extension explaining that "[a]lthough it is a lot of time and the local patent rules are in place for a reason, given the holidays, I will give the 60-day extension of all deadlines.  But you certainly should not expect another extension."  (*Id.* at 6.)  The Court also notes that pursuant to Local Patent Rule 2.1, Waters produced the file history for the '553 Beiner patent prior to Beiner's November 2011 deposition.

Despite the extension, on February 21, 2012, Defendants served their Local Patent Rule 3.1 Final Contentions without including any inequitable conduct claims.  Thereafter, in May 2012, Defendants deposed Waters' patent attorney, Stephen Favakeh, who testified as follows:

Q.     During the prosecution of the '553 application you determined it wasn't material to disclose the provisional applications that Waters had?

A.     Let me back up.  The Beiner application came into our firm and our normal

4

procedure is for paralegals to gather all prior art from related applications and compare IDSs [Information Disclosure Statements]. So in that Beiner application there was no IDS prepared because it wasn't a related application. So there was nothing for me to review as relevant – to determine its relevance.

So I want to clarify what I meant is that the references that I knew at the time of my prosecution of that Beiner reference were not material to its prosecution and that's because there weren't any. All I knew about was the references that were cited in the parent application and the references that were being applied in that current application.

There wasn't anything new. So that's why there was nothing cited.

Q.     While you were prosecuting the Beiner '553 application in 2010 you were aware that Waters had filed the provisional applications in 2005 and 2006 and 2009, correct?

A.     Sure.

Q.     You didn't disclose any of those in connection with the '553 prosecution.

A.     First of all, I'm not so sure that 2009 reference is prior art that needed to be disclosed.

Those other two references, I knew about them. They disclosed several different aspects of lighted headwear. Like I said, I didn't even consider them at the time as being relevant. They weren't brought to my attention. It wasn't something that I analyzed and said this is not relevant; it just wasn't even considered.

(R. 57-8, Ex. 8, 5/22/12 Favakeh Dep., at 104-06.)

After Favakeh's May 2012 deposition testimony, Defendants did not seek leave to amend their Local Rule 3.1 Final Contentions nor did Defendants seek to leave to amend their pleadings until September 12, 2012 – despite the Court's admonishment at the November 29, 2011 status hearing that Defendants should not expect another extension after the February 21, 2012 deadline. Accordingly, Defendants' present motion for leave is untimely under the Court's case schedule and the Local Patent Rules, especially because Defendants have failed to offer a sufficient explanation for their seven-month delay. *See Keeton v. Morningstar, Inc.,* 667 F.3d

877, 884 (7th Cir. 2012) ("District courts have considerable discretion to manage their dockets and to require compliance with deadlines."); *see also* N.D.Ill. L.P.R. 3.4 ("party may amend its Final Infringement Contentions or Final Non-infringement and Invalidity Contentions only by order of the Court upon a showing of good cause and absence of unfair prejudice to opposing parties, made promptly upon discovery of the basis for the amendment."); *see also Hukic,* 588 F.3d at 432 (district courts "'have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the [non-moving party], or where the amendment would be futile.'") (citation omitted). Indeed, not only is Defendants' attempt to amended their Answer and Counterclaim untimely, their proposed amended Counterclaim V is futile pursuant to the Federal Circuit's decisions in *Exergen* and *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (en banc).

## II. Futility

### A. Inequitable Conduct Pleading Standard

"Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the [PTO], which includes a duty to disclose to the [PTO] all information known to that individual to be material to patentability. . . ." 37 C.F.R. § 1.56(a); *see also Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 999 (Fed. Cir. 2007). "A breach of this duty – including affirmative misrepresentations of material facts, failure to disclose material information, or submission of false material information – coupled with an intent to deceive, constitutes inequitable conduct." *Honeywell*, 488 F.3d at 999. To properly allege a counterclaim for inequitable conduct, Defendants must allege that "(1) an individual associated with the filing and prosecution of a patent application made an affirmative

misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1327 n.3 (citations omitted).

Although inequitable conduct is a "broader concept than fraud," it is well-established Federal Circuit law that a party must plead inequitable conduct with particularity under Rule 9(b). *See id*. at 1326-27; *Central Admixture Pharm. Servs., Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1356-57 (Fed. Cir. 2007). "A pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b)." *Exergen*, 575 F.3d at 1326-27. In *Exergen*, the Federal Circuit articulated the substantive pleading requirements for inequitable conduct claims. Similar to fraud cases, to satisfy Rule 9(b)'s particularity requirements, the pleading must set forth the "who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1327 (quoting *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990)). The party asserting the counterclaim may aver knowledge and intent generally, nevertheless, "a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id.* at 1328-29. "A reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith." *Id.* at 1329, n.5.

Almost two years after *Exergen*, the Federal Circuit decided *Therasense* in which the Federal Circuit tightened the proof requirements with respect to the materiality and intent

elements of an inequitable conduct claim. *See id*. at 1285; *see also 1st Media, LLC v. Electronic Arts, Inc.,* 694 F.3d 1367, 1372 (Fed. Cir. 2012). *Therasense* did not address inequitable conduct claims at the pleading stage nor did it override *Exergen*'s pleading requirements. *See Delano Farms Co. v. California Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed. Cir. 2011). Instead, *Therasense* made clear that district courts may no longer assess allegations of materiality by the "reasonable examiner" or PTO Rule 56 standards. *See id*. at 1313-14. Instead, "in assessing the materiality of a withheld reference," the Court must determine whether there are sufficient allegations from which it may reasonably infer that "the PTO would not have allowed the claim if it had been aware of the undisclosed prior art." *Therasense*, 649 F.3d at 1291-94. Further, *Therasense* reaffirmed that district courts "may not infer intent solely from materiality." *Id*. at 1290 ("A district court should not use a 'sliding scale,' where a weak showing of intent may be found sufficient based on a strong showing of materiality, and vice versa."). In short, "[i]ntent and materiality are separate requirements." *Id.*

### B.      Intent and Materiality

"A charge of inequitable conduct based on a failure to disclose will survive a motion to dismiss only if the plaintiff's complaint recites facts from which the court may reasonably infer that a specific individual both knew of invalidating information that was withheld from the PTO and withheld that information with a specific intent to deceive the PTO." *Delano Farms,* 655 F.3d at 1350 (citing *Exergen,* 575 F.3d at 1318, 1330); *see also Outside the Box Innovations, LLC v. Travel Caddy, Inc.,* 695 F.3d 1285, 1291 (7th Cir. 2012) ("Specific intent to deceive the PTO requires 'knowledge and deliberate action'") (quoting *Therasense,* 649 F.3d at 1291).

In their proposed Counterclaim V, Defendants fail to sufficiently allege that a specific individual withheld material information with the specific intent to deceive the PTO.  In particular, although Defendants identify the individuals as Michael Waters and his attorneys, Defendants merely allege that upon information and belief, Michael Waters and Waters' attorneys made a deliberate decision to withhold the references related to the '524 patent so the '553 patent would issue.  (R. 54, First Amend. Counterclaim V, ¶ 49.)  Michael Waters, however, is not the inventor nor was he one of the attorneys who prosecuted the '553 patent.  Instead, Edward Beiner, the inventor, assigned the '486 patent and continuation application, which became the '553 patent, to Waters on July 20, 2010.  Hence, Defendants have failed to identify the specific individual associated with the filing or prosecution of the '553 patent, and thus the proposed Counterclaim fails to identify the "who" under Rule 9(b).  *See Exergen,* 575 F.3d at 1330.  Moreover, while Rule 9(b) allows pleading on "information and belief" when the essential information lies within another party's control – Defendants have failed to set forth "specific facts upon which the belief is reasonably based" concerning the "deliberate decision" to withhold the '524 references.  *See id.* at 1330-31.  Also, Defendants' cursory allegation that the "only reasonable inference to be drawn from Waters and its attorneys' failure to disclose the pending '524 application and/or Waters' provisional applications is that they intentionally, knowingly, and willfully concealed those references from the Examiner of the '553 patent," *see id.* at ¶ 50, fares no better under Rule 9(b) and *Exergen.  See In re BP Lubricants USA, Inc.,* 637 F.3d 1307, 1312 (Fed. Cir. 2011) (bare assertions insufficient under *Exergen* and *Iqbal*).[1]

---

[1]  The Court reminds the parties that arguments made for the first time in reply briefs are waived.  *See Griffin v. Bell,* 694 F.3d 817, 822 (7th Cir. 2012).

Further, *Exergen* teaches that to properly allege an inequitable conduct claim, the pleading must "identify which claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found" to fulfill the "what" and "where" Rule 9(b) requirements. *See id.* at 1329. Here, although Counterclaim V sets forth claims 11 and 16 of the '553 Beiner patent and claim 1 and the specification of the '524 patent, Defendants fail to specifically identify where the material information is found in the '524 patent references that are relevant to these claims. Instead, Defendants allege:

> That materiality is evidenced by Waters' recent lawsuit, where it alleges that the LIGHT UP READERS infringe the '524 patent after already having claimed infringement of the '553 patent. It also is evidenced by comparing the claims in the '553 patent with the claims in the '524 Application that matured into the '524 patent and in view of the Examiner's reasons for allowing the '524 patent to issue.

(First Amend. Counterclaim V, ¶ 47.) In sum, Defendants' conclusory allegations do not sufficiently allege the "what" and "where" requirements as required by Rule 9(b) and *Exergen*, especially where they have had the benefit of extensive discovery. *See Stanard v. Nygren,* 658 F.3d 792, 800 (7th Cir. 2011) ("A federal court is not obligated to sift through a complaint to extract some merit when the attorney who drafted it has failed to do so himself.").

In addition, Waters' prosecuting attorney, Stephen Favakeh, testified at his May 2012 deposition that he did not disclose the 2005, 2006, and 2009 provisional applications of the '524 patent because he assessed that they were not material to patentability during the prosecution of the '553 Beiner application. Defendants have not made particularized allegations to sufficiently allege intent under *Exergen* and Rule 9(b), namely, that Favakeh knew that these references were material and made a deliberate decision to withhold them to deceive the PTO. *See 1st Media,*

10

694 F.3d at 1372; *Therasense,* 649 F.3d at 1290.

Therefore, Defendants' proposed Counterclaim V and any such amendment to Counterclaim V could not withstand a Rule 12(b)(6) motion to dismiss, and thus are futile. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (To survive a Rule 12(b)(6) motion to dismiss, "the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."); *Swanson v. Citibank, N.A.,* 614 F.3d 400, 403 (7th Cir. 2010) ("a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law.") (emphasis in original). Accordingly, the Court, in its discretion, denies Defendants' motion for leave to amend its Answer and Counterclaim.

## CONCLUSION

For these reasons, the Court, in its discretion, denies Defendants' motion for leave to amend.

**Date:** November 28, 2012

**ENTERED**

**AMY J. ST. EVE**
**United States District Court Judge**

11